UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

The Standard Fire Insurance Co.,
    Plaintiff,

    v.                                      Civil Action No. 5:08-CV-258

Deirdre Donnelly,
    Defendant.

## OPINION AND ORDER
(Doc. 36)

This is an action for declaratory judgment brought by Plaintiff The Standard Fire Insurance Company ("Standard Fire") against Defendant Deirdre Donnelly, wherein Standard Fire seeks a declaration of its coverage obligations under certain homeowners insurance policies issued by Standard Fire to Donnelly from August 2002 through August 2009 ("the Policies"). Currently pending before the Court is Standard Fire's Motion to Amend Complaint (Doc. 36), which is opposed by Donnelly (Doc. 40).

For the reasons explained below, the Court GRANTS Standard Fire's Motion.

## Background Facts/Procedure

Standard Fire's Complaint arises from two underlying civil lawsuits. The first, *Shahi v. Madden*, was brought in 2004 by Kaveh and Leslie Shahi against Donnelly's husband, Daniel Madden, in Vermont state court for Madden's acts of trespass and vandalism on the Shahis' property. After a jury trial, Madden was found liable to the Shahis in the amount of $1.8 million, which verdict was affirmed by the Vermont Supreme Court in March 2008.

1

Meanwhile, in September 2006, the Shahis sued Donnelly in a separate lawsuit, *Shahi v. Donnelly*, seeking to hold her jointly liable for her husband Madden's unlawful conduct under theories of conspiracy and vicarious liability. (*See* Doc. 40-1, Complaint filed in Windsor Superior Court in *Shahi v. Donnelly*, No. 496-9-06.) Additionally, the September 2006 lawsuit (hereafter "the underlying action"), which is still pending, seeks to void Madden and Donnelly's title to a parcel of land held in tenancy by the entirety, under the theory that Donnelly and Madden fraudulently transferred such property in an attempt to avoid the Shahis' efforts to collect on their Judgment in the 2004 lawsuit.

Donnelly requested that her insurer, Standard Fire, defend and indemnify her in the pending underlying action. In response, on October 5, 2006, Standard Fire sent Donnelly a proposed bilateral non-waiver agreement (hereafter "the 2006 non-waiver agreement"), which Donnelly signed and returned to Standard Fire in November 2006. (Doc. 40-2.) Pursuant to that non-waiver agreement, Standard Fire reserved the right to deny coverage for any valid reason, and "continue[d] to review th[e] notice of claim even though a coverage question exists." (*Id.* at p. 1, ¶ 2.) Soon thereafter, in a December 14, 2006 letter, Standard Fire's coverage counsel informed Donnelly that Standard Fire had completed its review of the file and concluded that there was no duty to defend or indemnify Donnelly in the underlying action for the principal reason that all of the allegations against either Donnelly or Madden involved intentional, non-accidental conduct, which was not covered under the relevant Policies. (Doc. 40-3.)

Almost two years later, on September 25, 2008, after the Shahis had filed an Amended Complaint adding a negligent entrustment claim in the underlying action,

coverage counsel for Standard Fire sent Donnelly another proposed bilateral non-waiver agreement (hereafter "the 2008 non-waiver agreement") which, like the 2006 non-waiver agreement, reserved the right to deny coverage for any valid reason, and stated that "[t]here is a question whether coverage under the policy applies to any of the Counts in the [Amended] Complaint."  (Doc. 40-5.)  Donnelly signed the agreement and returned it to Standard Fire.

On November 26, 2008, in an effort to relieve itself of any obligation to defend or indemnify Donnelly in the ongoing underlying action, Standard Fire filed its Declaratory Judgment Complaint in the instant action.  The Complaint alleges that Standard Fire is not liable to provide indemnity or a defense to Donnelly because the Shahis' claims against Donnelly in the underlying action "do not arise from an 'occurrence' as that term is defined in the Policies and arise from and are dependent on Madden's intentional acts." (Doc. 1, ¶ 22.)

On March 11, 2009, Donnelly filed a document with the Court which states that she "hereby assigns The Standard Fire Insurance Company policy to Mr. and Mrs. Shahi in consideration of her not having any exposure to a monetary judgment against her." (Doc. 25.)

On April 6, 2009, coverage counsel for Standard Fire sent a letter (hereafter "the proposed 2009 non-waiver agreement") to Donnelly for the asserted purpose of "clarify[ing] and updat[ing] the coverage issues" addressed in the 2008 non-waiver agreement.  (Doc. 40-6.)  The letter states that, based on Standard Fire's preliminary coverage review, it "is currently willing to continue to assume the costs of defense."  (*Id.*

at p. 1.) However, the letter continues, Standard Fire also "continues to reserve its rights under the policy(ies) to raise any rights or defenses which may exist." (*Id.*) The letter then sets forth those provisions of the policy which "appear to be at issue with respect to the allegations in the Shahis' Complaint," including provisions titled "occurrence," "bodily injury," "duties after loss," and "damage to property of others." (*Id.* at pp. 2-4.) Finally, the letter advises that Standard Fire "expressly reserves all rights under the policy to raise the above coverage defenses, and any other defenses, the applicability of which may not yet be apparent." (*Id.* at p. 4.) Donnelly has not signed the proposed 2009 non-waiver agreement.

Standard Fire now seeks leave to file a proposed First Amended Declaratory Judgment Complaint, which includes the following additional defenses to coverage: (1) the Shahis' claims against Donnelly in the underlying action are excluded because they do not arise from an "insured location;" (2) Donnelly breached the terms of the Policies by refusing to sign the April 6, 2009 proposed non-waiver agreement; and (3) Donnelly breached the terms of the Policies by attempting to assign the Policies to the Shahis. (Doc. 36-2, p. 6.)

Donnelly opposes Standard Fire's Motion on three grounds. First, she argues that Standard Fire has waived the right to deny coverage on the additional grounds raised in the proposed Amended Complaint because Standard Fire failed to specify its particular grounds for denying coverage in the bilateral non-waiver agreements signed by Donnelly in 2006 and 2008. Second, Donnelly contends that, to the extent that the proposed 2009 non-waiver agreement asserts new grounds to deny coverage, it is an improper attempt to

4

"mend the hold;" and to the extent the proposed agreement seeks to reserve Standard Fire's right to deny coverage on such new grounds, it constitutes an unlawful unilateral reservation of rights. Finally, Donnelly claims that allowing Standard Fire to file the proposed Amended Complaint would substantially prejudice Donnelly, given that the underlying action has been pending for over three years and this case has been pending for more than one year.

## **Standard of Review**

The grant or denial of leave to amend a complaint is within the sound discretion of the district court, and leave to amend "'shall be freely given when justice so requires.'" *Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) (quoting Fed. R. Civ. P. 15(a) and citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Second Circuit has determined that a motion to amend should be denied "only for such reasons as 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653, fn. 6 (2d Cir. 1987) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend. *State Teachers*, 654 F.2d at 856; *CP Solutions PTE, Ltd. v. General Elec. Co.*, 237 F.R.D. 534, 537 (D. Conn. 2006). The Second Circuit has explained that the court has discretion to deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of

5

proceedings by, for example, introducing new issues for discovery." *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000) (quotation marks and citations omitted).

## Analysis

**A.     Undue Delay**

Standard Fire has not acted with undue delay in filing its Motion to Amend. As noted above, Standard Fire initiated this action on November 25, 2008; sent the 2009 proposed non-waiver agreement to Donnelly less than five months later on April 6, 2009; and filed the instant Motion approximately eight months later on December 11, 2009. Although it is unclear why Standard Fire allowed eight months to lapse between the time it sent the proposed 2009 non-waiver agreement to Donnelly and the time it filed this Motion, it is clear that this lawsuit is still in its initial stages. The Complaint was filed only approximately one year prior to the filing of this Motion; discovery is in its initial stages, as no depositions have yet been conducted nor paper discovery exchanged; and the case is not scheduled to be ready for trial until July 2010. (*See* Doc. 35, Stipulated Discovery Schedule/Order, approved August 4, 2009; Doc. 48, p. 6.) Additionally, discovery appears to be ongoing in the underlying action. This is not a case where the amendment is proposed on the eve of trial and would result in problems of proof. *See Upper Valley Ass'n for Handicapped Citizens v. Mills*, 928 F. Supp. 429, 434 (D. Vt. 1996) (citing *State Teachers*, 654 F.2d at 856); *compare Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101-02 (2d Cir. 2002) (finding no abuse of discretion by district court in denying plaintiff's motion to amend complaint, where motion was filed over four years after original complaint and over three years after the close of discovery).

6

**B.     Bad Faith/Prejudice**

As noted above, delay alone is an insufficient basis on which to deny a motion to amend; there must also be a showing of prejudice or bad faith. *See State Teachers*, 654 F.2d at 856; *CP Solutions*, 237 F.R.D. at 537. In fact, the non-movant on a motion to amend "carries the burden of demonstrating that *substantial* prejudice would result were the proposed amendment to be granted." *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996) (emphasis added). Moreover, "[a]ny prejudice which the non-movant demonstrates must be balanced against the court's interest in litigating all claims in a single action and any prejudice to the movant which would result from a denial of the motion." *Id.*

Applying these principles, in *CP Solutions PTE, Ltd. v. General Elec. Co.*, 237 F.R.D. 534, 537 (D. Conn. 2006), the court held that, even though the plaintiff's proposed amendments may necessitate additional discovery and postponing the trial date, the prejudice the defendant may suffer if the amendments were allowed was insufficient to warrant denying the motion to amend. In *South Lyme Property Owners Ass'n, Inc. v. Town of Old Lyme*, 539 F. Supp. 2d 547, 555 (D. Conn. 2008), on the other hand, the court found that the defendants in a section 1983 action challenging zoning restrictions were not entitled to amend their answer to assert limitations defense, where they offered no explanation for their over five-year delay in raising defense and the plaintiffs had committed significant resources to litigating their claims.

Here, Donnelly has failed to state with any specificity how or why she will be prejudiced by the filing of Standard Fire's proposed Amended Complaint. As discussed

above, the case is in its initial stages – discovery is ongoing; no dispositive motions have been filed; and the trial is months away. *Compare Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 161 (S.D.N.Y. 2005) ("A proposed amendment is especially prejudicial when discovery has been completed and a summary judgment motion has been filed."). It cannot be said that the addition of the three new allegations contained in the proposed Amended Complaint would cause unfair surprise to Donnelly, as she has been aware that Standard Fire believed the "insured location" exclusion in the Policies was a valid defense since the time it sent the proposed 2009 non-waiver agreement to her last April, and the other two new allegations are based on Donnelly's own conduct during the pendency of this action. For these reasons, the Court finds that the prejudice Donnelly may suffer if the proposed Amended Complaint is filed is insufficient to warrant denying Standard Fire's Motion to Amend.

**C. Futility of Amendment**

Having determined that the proposed Amended Complaint is not the result of undue delay or bad faith, and would not cause significant prejudice to Donnelly, the Court must determine whether the proposed new claims are futile. The Second Circuit has held that, "[w]here the amended portion of the complaint would fail to state a cause of action, . . . the district court may deny the party's request to amend." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000). Nonetheless, "futility" is a valid reason for denying a motion to amend only where it is "beyond doubt that the plaintiff can prove no set of facts in support" of the amended claims. *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (internal quotation marks

omitted); *Chimarev v. TD Waterhouse Investor Servs., Inc.*, 233 F. Supp. 2d 615, 617 (S.D.N.Y. 2002) ("A proposed claim is futile only if it is clearly frivolous or legally insufficient on its face.").

      i.      **Proposed New Claims Regarding Additional Coverage Defenses**

Donnelly argues that, under Vermont law, Standard Fire has waived the right to deny coverage for the additional grounds asserted in the proposed Amended Complaint because the 2008 non-waiver agreement fails to specify the grounds for denying coverage, and thus is a "bare notice of a reservation [of] rights." (Doc. 40, p. 8.) Donnelly further contends that Standard Fire may not "mend the hold" by attempting to assert new grounds to deny coverage in the proposed 2009 non-waiver agreement, as such practice is barred under *Cummings v. Connecticut Gen. Life Ins. Co.*, 102 Vt. 351, 148 A. 484 (Vt. 1930) and *In re Lynch*, 226 B.R. 813 (Bankr. D. Vt. 1998). (*Id.*) Finally, Donnelly claims that Standard Fire's attempt to use the proposed Amended Complaint, along with the proposed 2009 non-waiver agreement, to unilaterally reserve Standard Fire's right to deny coverage on new grounds is foreclosed under Vermont Law. (*Id.* at pp. 8-9.)

In *Cummings*, 148 A. at 487, the Vermont Supreme Court held that when an insurer elects to specify reasons for denying coverage, it thereafter waives all other available grounds for denying coverage unless it expressly reserves the right to later raise other grounds. The Court stated: "[W]hen [an insurance company] deliberately puts [its] refusal to pay on a specified ground, and says no more, [it] should not be allowed to 'mend [its] hold' by asserting other defenses." *Id.*; *see also Hamlin v. Mut. Life Ins. Co.*,

9

145 Vt. 264, 268-69 (Vt. 1984); *Segalla v. United States Fire Ins. Co.*, 135 Vt. 185, 189 (1977) ("The general principle of law controlling in this jurisdiction is that: [w]hen one defense is specified by an insurer as to its reason for refusing to pay a loss, all others are waived."). The foundation for this doctrine is Vermont's public policy favoring honesty between an insurer and its insured. *Cummings*, 148 A. at 487.

Preliminarily, it is worth noting that the issue of whether a federal court sitting in diversity should apply the "mend the hold" doctrine at the pleading stage of a case involves conflicting federal and state pleading rules. Citing to the Seventh Circuit, the United States Bankruptcy Court for the Northern District of Illinois explained:

> [C]ourts have struggled with the fact that the [mend the hold] doctrine clashes with liberal federal and state pleading rules. The Seventh Circuit opined that the reach of the doctrine is uncertain, particularly as it contradicts Rule 8(e)(2), which permits a party to state as many claims as the party has without regard to consistency. . . .
>
> Under Fed. R. Civ. P. 15 . . ., amendments may be made as of right, and when permission is required that permission is to be freely given. Pleadings may even be amended during trial to conform to the evidence presented unless prejudice can be demonstrated. *The "mend the hold" doctrine appears to contradict these liberal pleading rules directly if applied at this stage of litigation.*

*In re Apex Automotive Warehouse, L.P. v. v. WSR Corp.*, 205 B.R. 547, 552 (Bankr. N.D. Ill. 1997) (emphasis added) (internal citations omitted); *see also Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 362, 364 (7th Cir. 1990) ("The 'mend the hold' doctrine, procedurally viewed, embodies an antithetical conception of the litigation process, one in which a party is expected to have all his pins in perfect order when he files his first pleading."). The same court concluded that the "mend the hold" doctrine "is

10

not applicable to the initial pleading stage of litigation so as to prevent a party from freely amending its pleadings." *Apex*, 205 B.R. at 554. Putting aside this procedural conflict, however, and assuming that the "mend the hold" doctrine may apply in this Circuit to the initial pleading stage of litigation, Donnelly misconstrues the relevant law, and the doctrine does not apply on this set of facts.

In 1930, the Vermont Supreme Court explained the "mend the hold" doctrine in *Cummings*, as follows:

> The [mend the hold] rule works no hardship on the insurer. Considerations of public policy require that he shall deal with his individual customer with entire frankness. He may refuse to pay and say nothing as to the basis of his refusal. In that case, all defenses to an action on the policy are available to him. He may refuse to pay on a particular ground reserving the right to defend on other grounds, with the same result. But, when he deliberately puts his refusal to pay on a specified ground, and says no more, he should not be allowed to "mend his hold" by asserting other defenses after the insured has taken him at his word and is attempting to enforce his liability.

*Cummings*, 148 A. at 487; *see also Hamlin*, 145 Vt. at 268-69. Therefore, in *Cummings*, the Court set forth the rule that, when an insurer states one or more specified reasons for denying responsibility under a policy, it waives all other known grounds for denial. The *Cummings* Court did not, however, hold that when an insurer generally reserves all applicable coverage defenses without specifying any particular defenses, it is barred from raising specific defenses later. In 2008, referring to the "mend the hold" doctrine as the "insurance-defense-waiver rule," the Vermont Supreme Court acknowledged that a general reservation of rights avoids waiver of additional defenses, stating: "[A]n insurer waives additional defenses that are not raised *or reserved* in an initial denial of coverage." *Progressive Ins. Co. v. Brown ex rel. Brown*, 184 Vt. 388, 391-92 (2008)

11

(emphasis added) (citing *Cummings*, 148 A. at 486). The Court continued: "[I]f an insurer initially denies coverage on a specified basis *and does not reserve the right to later raise other grounds*, it waives any additional defenses." *Id.* at 392 (emphasis added) (citing *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 177 Vt. 421, 427 (2004)). Clearly, the "mend the hold" doctrine does not bar insurers from generally reserving their right to assert coverage defenses.

Applied here, the doctrine does not preclude Standard Fire from asserting the new coverage defenses included in its proposed Amended Complaint because in the 2008 non-waiver agreement (which Donnelly signed), Standard Fire did not "deliberately put[] [its] refusal to pay on a specified ground, and say[] no more." *Id.* Rather, in that agreement, Standard Fire reserved the right to defend on any grounds, generally stating: "The Company reserves the right, under the policy, to deny coverage to Deirdre Donnelly or anyone claiming coverage under the policy. [¶] There may be other reasons why coverage does not apply. We do not waive our right to deny coverage for any other valid reason which may arise." (Doc. 40-5, p. 1, ¶¶ 3-4.) In contrast, in the proposed 2009 non-waiver agreement (which Donnelly has refused to sign), Standard Fire has committed to specific defenses, which it now seeks to add in the proposed Amended Complaint.

Donnelly's argument relies on a 1998 case from Vermont's Bankruptcy Court, *In re Lynch*, 226 B.R. 813, 815-16 (Bankr. D. Vt. 1998), which rejects the above argument and supports the contention that Standard Fire's attempted reservation of all potential defenses was improper. In *Lynch*, the Court held that a non-waiver agreement issued by

an insurer, which does not set forth any specific grounds for a potential denial of coverage, is ineffective under Vermont law to preserve the insurer's defenses to coverage. The Bankruptcy Court concluded that a reservation of rights letter or non-waiver agreement should either quote or make specific reference to policy provisions which are the basis for the insurer's reservation of rights. *Id.*

The *Lynch* holding that a general reservation of rights is ineffective conflicts with the *Cummings* decision, as discussed above, and established Vermont jurisprudence. For example, in *Vermont Ins. Mgmt., Inc. v. Lumbermens' Mut. Cas. Co.*, 171 Vt. 601, 603 (2000), the Vermont Supreme Court held that, "[w]e have long recognized that a bilateral reservation of rights agreement prevents a waiver of the right to dispute coverage." And in *City of Burlington v. Hartford Steam Boiler Inspection and Ins. Co.*, 190 F. Supp. 2d 663, 681 (D. Vt. 2002), the District Court held that the "mend the hold" doctrine does not apply where the insurer is silent with respect to potential defenses and there is no allegation that the insurer misled the insured by denying coverage on one ground while defending itself in litigation on different grounds.

Moreover, *Lynch* vaguely leaves room for an exception to its holding, which exception may apply here. Specifically, in a footnote, the Bankruptcy Court stated in *Lynch*:

> We realize that sometimes, the insurance carrier will not have notice of its defenses to coverage until it has time to investigate the claim. In such a case, we agree with the following commentary on insurance coverage:
>
> > A reservation of rights letter (or non-waiver agreement) should either quote or make specific reference to the policy provisions which are the basis for the insurer's reservation of

> the right to assert that there is no coverage for the claim. *If further investigation is required to ascertain whether coverage is available, the reservation of rights letter (or non-waiver agreement) should state that the insurer reserves the right to disclaim coverage based upon further factual development.* On the other hand, an insurer may not generally reserve its rights to defenses based upon 'such other reasons as may appear during our investigation of this claim or suit.'

*Lynch*, 226 B.R. at 816, fn. 7 (emphasis added). The 2008 non-waiver agreement could be construed to state that Standard Fire reserved the right to disclaim coverage based on further factual development. (*See* Doc. 40-5, 2008 non-waiver agreement ["There is a question whether coverage under the policy applies to any of the Counts in the Complaint."].) Furthermore, Donnelly's application of the *Lynch* ruling conflicts with an earlier ruling from the same court which ruled in *Lynch*. Specifically, approximately three years prior to the *Lynch* decision, in *In re Aberdeen 100, Inc.*, Nos. 94-10599, 94-1060, 1995 WL 447341, at *4 (Bankr. D. Vt. Jul. 21, 1995), the Vermont Bankruptcy Court held as follows:

> Plaintiffs argue that "when certain policy defenses are enumerated in . . . a letter [disclaiming coverage], the carrier forfeits all policy defenses not enumerated therein." The seminal Vermont case on an insurer's waiver of defenses is *Cummings v. Connecticut General Life Insurance Co.*, 102 Vt. 351, 360-62 (1930) . . . . The Court reiterated the *Cummings* rule in *Hamlin v. The Mutual Insurance Co.*, 145 Vt. 264, 268-69 (1984). The cases cited by Plaintiffs in support of their waiver argument are not relevant because they describe situations in which the insurer neglected to reserve its rights to defend on grounds other than those specifically stated. *Here, as previously noted, Continental's June 10, 1992 letter specifically "reserve[d] its rights to disclaim coverage under any other policy provisions, conditions, or exclusions which may prove to be pertinent to this claim as additional facts presently unknown to us may warrant."* Accordingly, we hold that Continental waived nothing.

14

(Emphasis added) (citation omitted). Finally, despite the *Lynch* case being over ten years old, it has never been cited in a Vermont federal or state case. For these reasons, the Court refrains from applying the ruling in *Lynch* to preclude Standard Fire from amending its Complaint in this case.

Because the 2008 non-waiver agreement generally preserved all of Standard Fire's defenses and did not specify any particular defenses, the Court finds that there was no waiver of defenses on behalf of Standard Fire, and the "mend the hold" doctrine does not apply. Accordingly, Standard Fire's proposed claims regarding new coverage defenses are not clearly frivolous or legally insufficient on their face, and Standard Fire is granted leave to include them in its proposed Amended Complaint.

      **ii.**      **Proposed New Claims Regarding Donnelly's Failure to Sign Proposed 2009 Non-Waiver Agreement and Assignment of Policies to Shahis**

Donnelly does not argue that Standard Fire's proposed new claim regarding Donnelly's failure to sign the proposed 2009 non-waiver agreement fails to state a cause of action. In fact, the Vermont Supreme Court has established that a declaratory judgment is available to insurers to determine their obligations under a contract of insurance. *See Smith v. Nationwide Mut. Ins. Co.*, 175 Vt. 355, 363-67 (Vt. 2003); *Farm Bureau Mut. Auto. Ins. Co. v. Houle*, 118 Vt. 154, 158 (Vt. 1954). The Court stated: "[W]hen . . . the insured does not cooperate so that the insurer may obtain from him an agreement allowing it to defend with reservations, a petition for a declaratory judgment to determine the coverage under the policy may be maintained." *Farm Bureau*, 118 Vt. at

158. Therefore, this proposed new claim is not "futile," and Standard Fire may include it in its proposed Amended Complaint.

Nor does Donnelly argue that Standard Fire's proposed new claim regarding Donnelly's assignment of the Policies to the Shahis fails to state a cause of action. Thus, this claim may not be considered "futile," and Standard Fire may include it in its proposed Amended Complaint.

## **Conclusion**

For these reasons, the Court GRANTS Standard Fire's Motion to Amend Complaint.

Dated at Burlington, in the District of Vermont, this 5th day of February, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge